**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joe and Wanda KABINTO, his wife,**
**et al., Defendants-Appellants.**

**No. 26235.**

United States Court of Appeals,
Ninth Circuit.

Feb. 18, 1972.

Rehearing Denied March 23, 1972.

Warren L. Bachtel (argued), Dale H. Itschner (argued), Clifford J. Hofmann, Window Rock, Ariz., for defendants-appellants.

Jacques B. Gelin, New York City (argued), Edmund B. Clark, Dept. of Justice, Shiro Kashiwa, Asst. Atty. Gen., Lands & Natural Resources Div., Washington, D. C., Richard K. Burke, U. S. Atty., Richard S. Alleman, Asst. U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before BROWNING and HUFSTEDLER, Circuit Judges, and FERGUSON,* District Judge.

PER CURIAM:

This is an appeal from a summary judgment of ejectment declaring 16 Navajo Indians to be trespassers upon a portion of the Hopi Indian Reservation and enjoining them from using or occupying the land. We affirm.

The background of the litigation:

1. In 1882, President Chester A. Arthur by executive order set aside a two and one-half million acre tract in northeastern Arizona for the use and occupancy of the Hopi Tribe "and such other Indians as the Secretary of the Interior may see fit to settle thereon".

2. For many years thereafter the Hopi and Navajo Indians asserted conflicting claims to the tract. All attempts to resolve the controversy by agreement and administrative action failed.

---

* Hon. Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation.

3. Finally, the two tribes, the Secretary of the Interior and Congress determined that resort must be had to the courts.

4. A special jurisdictional statute, the Act of July 22, 1958, 72 Stat. 403, was passed "to determine the rights and interests of the Navaho Tribe, Hopi Tribe, and individual Indians to the area set aside by Executive order of December 16, 1882 . . . ."

5. Section 1 of the Act provided that the land was to be held by the United States in trust for the Hopi Indians and such other Indians, if any, as theretofore had been settled thereon by the Secretary of the Interior pursuant to the executive order.

6. The Act further authorized the "Navaho Indian Tribe and the Hopi Indian Tribe, acting through the chairmen of their respective tribal councils for and on behalf of said tribes, including all villages and clans thereof, and on behalf of any Navaho or Hopi Indians claiming an interest in the area . . . and the Attorney General on behalf of the United States . . . to commence or defend . . . an action . . . for the purpose of determining the rights and interests of said parties in and to said lands and quieting title thereto in the tribes or Indians establishing such claims pursuant to such Executive order as may be just and fair in law and equity".

7. It provided that the action was to be heard and determined by a three-judge district court with direct appeal to the Supreme Court.

8. The result was Healing v. Jones, 210 F.Supp. 125 (D.Ariz.1962), aff'd, per curiam, 373 U.S. 758, 83 S.Ct. 1559, 10 L.Ed.2d 703 (1963), in which judge Hamley described the controversy as " 'the greatest title problem of the West' ". 210 F.Supp. at 129.

9. The *Healing* court, *inter alia*, quieted title to all the lands within Land Management District 6 in favor of the Hopi Indians, and stated as an unprophetic conclusion, "Under the judgment being entered herein . . . district 6 . . . will be completely removed from controversy, having been awarded exclusively to the Hopi Indian Tribe". 210 F.Supp. at 192.

10. The appellants, who are Navajo Indians residing within that district 6, refuse to concede the validity of the judgment in *Healing*.

11. That refusal caused this litigation. The United States brought the action in its capacity as sovereign and as trustee for the Hopi Tribe to evict the appellants. The case was determined on the motion of the United States for summary judgment and the Navajos' motion in opposition and an alternative motion for summary judgment. The district court granted the motion of the United States and rejected the contentions of appellants.

On appeal appellants assert (1) the subject matter of the litigation is not judicially cognizable; (2) their right to aboriginal occupancy of the land was not extinguished by *Healing*; (3) they were inadequately represented in *Healing*; (4) the Act of July 22, 1958, and *Healing* deprived them of property without due process of law; and (5) the United States must do equity.

The principal contention of appellants is that they hold title to the land they occupy under a claim of aboriginal right of occupancy which was not extinguished by *Healing*. They assert that they possess rights of occupancy which arose prior to the 1882 Executive Order which are outside the Act of 1958 and *Healing*, both of which were based on the executive order. In support of their contention, affidavits were filed which set forth the fact that the appellants are direct descendants of Navajos who had resided on the lands prior to 1882. The district court determined that the appellants' claim of aboriginal title did not defeat the motion for summary judgment and the affidavits were immaterial as a matter of law.

The primary claim advanced by the Navajos in *Healing* was that occupancy

"in Indian fashion" constituted settlement under the language of the 1882 Executive Order, and "liken[ed] the character and use and occupancy by 'other Indians' contemplated by the executive order to that which must be found to exist in order to establish aboriginal Indian title", as such title was defined in United States v. Santa Fe Pacific R. Co., 314 U.S. 339, 62 S.Ct. 248, 86 L.Ed. 260 (1941). 210 F.Supp. at 143. The Hopi Chairman contended that the concept of aboriginal title had no relevancy in the determination of the litigation, asserting that before any Navajo Indian acquired any right in the tract he must first have been permitted by the Secretary of the Interior to enter upon and then physically occupy it. 210 F.Supp. at 144. However, the court, in *Healing*, rejected both contentions and specifically determined that Indians other than the Hopis acquired rights in the land (1) if they occupied the area in Indian fashion as a permanent residence and (2) if such occupancy was without advance permission by the Secretary of the Interior, it was authorized subsequently by the Secretary. 210 F.Supp. at 144.

The principal discussion of *Healing* was a determination of whether the Secretary had ever authorized occupancy by the Navajos. The court found the Navajo Indians used and occupied parts of the 1882 reservation in Indian fashion as their continuing and permanent area of residence long prior to the creation of the reservation in 1882, but that their rights had not become vested until the passage of the Act of 1958. 210 F.Supp. at 144–145. With reference to district 6, *Healing* determined that in 1940 there were 160 Navajos residing there. 210 F.Supp. at 160 n. 44. However, the court specifically found that "neither the Navajo Indian Tribe nor individual Navajos were authorized [by the Secretary] to settle within" district 6. 210 F.Supp. at 173.

In its unreported conclusions of law, the *Healing* court determined:

"Neither the Navajo Indian Tribe nor any individual Navajo Indians,

whether or not living in the reservation area in 1882, gained any immediate rights of use and occupancy therein by reason of the issuance of the Executive Order of December 16, 1882, or by reason of any other fact or circumstance, save and except by the exercise, after December 16, 1882, of the authority reserved in the Secretary of the Interior, under the Executive Order of December 16, 1882, to settle other Indians in that reservation."

It thus appears that the claims which appellants make here with reference to aboriginal claims were raised and considered at length by the *Healing* court and decided adversely to them. Appellants stress the fact that nowhere in the *Healing* opinion is there a discussion of Cramer v. United States, 261 U.S. 219, 43 S.Ct. 342, 67 L.Ed. 622 (1923). In *Cramer*, the Supreme Court held that Indians who settle upon the public domain and establish residency thereby acquire rights of possession. *Cramer*, as was United States v. Santa Fe Pacific R. Co., *supra*, was an action brought by the United States to protect Indian title against third parties who also claimed interests from the United States. The question was not the power of the government to extinguish aboriginal Indian title, but whether that power was exercised. *Healing* determined that it had been.

■ The judgment in *Healing* is *res judicata*, is not subject to collateral attack save for fraud, and is a bar to the claims of the appellants. "The rule [of *res judicata*] provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' Cromwell v. County of Sac, 94 U.S. 351, 352 [24 L.Ed. 195]." Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591,

597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948).

■ The United States has the power to extinguish Indian title, i. e., the aboriginal right of occupancy. Johnson v. McIntosh, 21 U.S. (8 Wheat.) 543, 5 L. Ed. 681 (1823); Lone Wolf v. Hitchcock, 187 U.S. 553, 23 S.Ct. 216, 47 L. Ed. 299 (1903); United States v. Mil. Lac Chippewas, 229 U.S. 498, 33 S.Ct. 811, 57 L.Ed. 1299 (1913); Chippewa Indians v. United States, 301 U.S. 358, 57 S.Ct. 826, 81 L.Ed. 1156 (1937). "The power of Congress in that regard is supreme." United States v. Santa Fe Pacific R. Co., *supra,* 314 U.S. at 347, 62 S.Ct. at 252. *Healing* found that Congress effectively extinguished all Navajo claims, including aboriginal, and converted them into vested rights upon court determination.

■ The argument that the subject matter of the litigation must be left for the determination of Congress and, therefore, beyond judicial cognizance was raised in a prior proceeding of *Healing,* Healing v. Jones, 174 F.Supp. 211 (D.Ariz.1959). The same three-judge district court held that Congress by the Act of July 22, 1958, properly assigned the judicial task involved in *Healing.* 174 F.Supp. at 216. The first *Healing* decision rejected the challenge to its jurisdiction, and that rejection is *res judicata* to the position again advanced by the appellants here.

■ The third argument made by appellants is that they are not bound by the adverse ruling in *Healing* because they were not adequately represented. That claim arises from the fact that in *Healing* the Chairman of the Navajos made no claim on behalf of any individual Navajo Indian except as beneficiary of the Navajo tribal claim. 210 F.Supp. at 132. From this, appellants assert that although Paul Jones, the Chairman, appeared on appellants' behalf, he made no claim on their behalf. The reason why the claims of individual Navajos were made as beneficiaries under the Navajo tribal claim is that the Act of July 22, 1958, provided in Section 2 that "Lands, if any, in which the Navaho Indian tribe or individual Navaho Indians are determined by the court to have the exclusive interest shall thereafter be a part of the Navaho Indian Reservation". The strategy of the Chairman of the Navajos was dictated by the mandate of Congress, and not by reason of any conflict of interest, for Congress determined the rights of the Navajos to be tribal.

■ The contention that the extinguishment of appellants' aboriginal rights deprived them of property without just compensation is again a matter which is rendered *res judicata* by *Healing.* *Healing* determined that appellants had no claims which were cognizable under the law, and therefore not compensable. In effect, appellants are rearguing *Healing.* The Supreme Court has affirmed *Healing,* which is now final and binding upon this court and all other courts. Furthermore, in Tee-Hit-Ton Indians v. United States, 348 U.S. 272, 75 S.Ct. 313, 99 L.Ed. 314 (1955), the Supreme Court determined that aboriginal title is only a permissive right of occupancy which may be extinguished at the will of Congress. Aboriginal title "is not a property right but amounts to a right of occupancy which the sovereign grants and protects against intrusion by third parties but which right of occupancy may be terminated and such lands fully disposed of by the sovereign itself without any legally enforceable obligation to compensate the Indians". 348 U.S. at 279, 75 S.Ct. at 317.

■ Lastly, the appellants claim that the United States in order to be entitled to a judgment of ejectment must be required to provide them with lands of equivalent area and quality. Without determining whether their contention is correct, the argument must be resolved against appellants, as the issue is raised for the first time on appeal. The general rule in this circuit is that a district court will not be reversed on a contention that was never presented to it. Walker v. Continental Life & Accident

Company, 445 F.2d 1072 (9th Cir. 1971). However, the relationship between the United States and appellants is like that of a guardian to his ward. *See* Rockbridge v. Lincoln, 449 F.2d 567 (9th Cir. 1971). There is nothing in the record to suggest that the United States will not fulfill its fiduciary obligations to appellants when this litigation is concluded.

The judgment is, therefore, affirmed.