719 F.2d 314
 The HOPI TRIBE, Plaintiff-Appellant, Cross-Appellee,
v.
James G. WATT, Secretary of the Interior, et al.,
Defendants-Appellees, Cross- Appellants,
and
The Navajo Tribe, Defendant in Intervention-Appellee.
Ivan L. SIDNEY, etc., Plaintiff-Appellant, Cross-Appellee,
v.
Peterson ZAH,* Defendant-Appellee,
and
William French Smith, Attorney General of the United States,
Defendant- Appellee, Cross-Appellant.
 Nos. 82-5648, 82-5649, 82-5679 and 82-5680.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 15, 1983.
Decided Oct. 25, 1983.
 
 Scott C. Pugsley, Boyden, Kennedy & Romney, Salt Lake City, Utah, for plaintiff-appellant, cross-appellee.
 Martin W. Matzen, Washington, D.C., for defendants-appellees, cross-appellants.
 Louis Denetsosie, John A. MacKinnon, Window Rock, Ariz., for defendant in intervention-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before SCHROEDER and BOOCHEVER, Circuit Judges, and EAST,** District Judge.
 SCHROEDER, Circuit Judge.
 
 
 1
 In 1974 Congress passed the Navajo-Hopi Settlement Act, Pub.L. No. 93-531, 88 Stat. 1712 (1974). The Act provided a mechanism for partitioning reservation land which, pursuant to the district court decision in Healing v. Jones, 210 F.Supp. 125 (D.Ariz.1962), aff'd, 373 U.S. 758, 83 S.Ct. 1559, 10 L.Ed.2d 703 (1963) (per curiam), had been created as a joint use area for both the Navajo and Hopi tribes. A partition order was entered by the district court in 1977 and finally approved by this court in 1980. See Sekaquaptewa v. MacDonald, 626 F.2d 113 (9th Cir.1980).
 
 
 2
 The actual process of partition necessarily involves the relocation of a substantial number of members of the Navajo Tribe who graze their livestock upon land partitioned to the Hopi Tribe, and that is the circumstance which gives rise to this proceeding. Although Congress made some provisions for this consequence in the 1974 Act, see 25 U.S.C. Secs. 640d-11 to 640d-14, both tribes became dissatisfied with the partition and relocation process as well as with other aspects of the Act. Their dissatisfaction led to 1980 amendments. See Relocation Amendments Act of 1980, Pub.L. No. 96-305, 94 Stat. 929 (1980). The amendments which are relevant to this case provide for the transfer of jurisdiction over partitioned lands to the respective tribes while, at the same time, providing for the protection of the rights of those still awaiting relocation. See 25 U.S.C. Secs. 640d-9(c)-(f). A further amendment allows a limited number of Navajo relocatees to apply for a "life estate" lease so they can remain on Hopi partitioned land. See 25 U.S.C. Sec. 640d-28.
 
 
 3
 Prior to the 1980 amendments, the Interior Secretary administered the partitioned joint use area and had promulgated grazing regulations, see 25 C.F.R. Pt. 153 (redesignated at 25 C.F.R. Pt. 168, 47 Fed.Reg. 13,327 (1982)), to protect partitioned Hopi land and further the relocation process through Navajo livestock reduction. See 25 C.F.R. Sec. 153.2 (1981). Navajos awaiting relocation had to obtain permits from the United States in order to graze their livestock on Hopi land.
 
 
 4
 After the 1980 amendments, the Hopi Tribe instituted this proceeding against the government to prevent the Department of Interior from continuing to regulate Navajo grazing in the land partitioned to the Hopis. The Hopi sought a declaration that the control of grazing by Navajo relocatees and life tenants is within the exclusive jurisdiction of the Hopi Tribe.[1] In its published opinion, the district court held that the government retains some authority to act to protect grazing rights of the relocatees and life tenants. Hopi Tribe v. Watt, 530 F.Supp. 1217 (D.Ariz.1982). The Hopi Tribe appeals and the government cross-appeals.
 
 
 5
 The case as it reaches us turns squarely upon the interpretation of section 3 of the 1980 amendments, codified at 25 U.S.C. Secs. 640d-9(c)-(f). This section, in pertinent part, provides:
 
 
 6
 (c) Protection of rights and property of individuals subject to relocation
 
 
 7
 The Secretary shall take such action as may be necessary in order to assure the protection, until relocation, of the rights and property of individuals subject to relocation, pursuant to this [Act], or any judgment of partition pursuant thereto, including any individual authorized to reside on land covered by a life estate conferred pursuant to section 640d-28 of this act.
 
 
 8
 (d) Protection of benefits and services of individuals subject to relocation
 
 
 9
 With respect to any individual subject to relocation, the Secretary shall take such action as may be necessary to assure that such individuals are not deprived of benefits or services by reason of their status as an individual subject to relocation.
 
 
 10
 (e) Tribal jurisdiction over partitioned lands
 
 
 11
 (1) Lands partitioned pursuant to this [Act], ... shall be subject to the jurisdiction of the tribe to whom partitioned and the laws of such tribe shall apply to such partitioned lands under the following schedule:
 
 
 12
 (A) Effective ninety days after enactment of this subsection, [July 8, 1980] all conservation practices, including grazing control and range restoration activities, shall be coordinated and executed with the concurrence of the tribe to whom the particular lands in question have been partitioned, and all such grazing and range restoration matters on the ... Hopi Reservation lands [shall be administered] by the Bureau of Indian Affairs Phoenix Area Office, under applicable laws and regulations.
 
 
 13
 (B) Notwithstanding any provision of law to the contrary, each tribe shall have such jurisdiction and authority over any lands partitioned to it and all persons located thereon, not in conflict with the laws and regulations referred to in paragraph (A) above, to the same extent as is applicable to those other portions of its reservation. Such jurisdiction and authority over partitioned lands shall become effective April 18, 1981.
 
 
 14
 The provisions of this subsection shall be subject to the responsibility of the Secretary to protect the rights and property of life tenants and persons awaiting relocation as provided in subsections (c) and (d) of this section.
 
 
 15
 The district court agreed with the Hopi that, because of the provision in subsection (e)(1)(A) that "conservation practices, including grazing control," must be "coordinated and executed with the concurrence of the tribe to whom the particular land ... [has been] partitioned," the government cannot act with respect to Navajo relocatee grazing without seeking the concurrence of the Tribe. It also held, however, that the proviso following subsection (e)(1)(B), setting forth the Secretary's responsibility to protect the "rights and property of life tenants and persons awaiting relocation," means that, in the event concurrence is not reached, the government can itself take steps, with appropriate procedural safeguards, to provide for Navajo grazing. The Hopi challenge the latter holding, contending that they have exclusive jurisdiction over all grazing matters on land previously partitioned to them by the court, and that the government can take no action without their concurrence.
 
 
 16
 The main issue on appeal thus becomes whether Navajo tribal members awaiting relocation have, under the 1980 amendments, some right to graze livestock on Hopi partitioned land which the federal government may act to protect. Because we agree with the district court that Congress intended to include grazing within the scope of the protection it afforded relocatees and life tenants, we affirm.
 
 
 17
 We are cognizant of the lengthy, often clouded legislative history of the Navajo-Hopi dispute during the past decades. The relevant portion of that legislative history and the parties' arguments with respect to it are described accurately in the district court's opinion, see 530 F.Supp. at 1219-25, and need no further reiteration here.[2] In deciding the precise issue of statutory interpretation before us, we must examine the language of the statute and the particular concerns which motivated Congress to pass it. See Watt v. Alaska, 451 U.S. 259, 265-66, 101 S.Ct. 1673, 1677-78, 68 L.Ed.2d 80 (1981); Shields v. United States, 698 F.2d 987, 989 (9th Cir.1983) (court's objective is to ascertain intent of Congress and primary rule of statutory construction is to give effect to plain meaning of language used).
 
 
 18
 The final proviso of 25 U.S.C. Sec. 640d-9(e), setting forth the Secretary's responsibilities to protect rights and property of relocatees and life tenants, is, on the face of the statute, applicable to both subsection (e)(1)(A), pertaining to conservation practices, as well as to subsection (e)(1)(B), pertaining to other tribal authority. Thus, as the district court concluded, the plain meaning of the statute is that the Interior Department may act on conservation practices without Hopi concurrence, so long as the action is to protect the rights and property of relocatees. Since the statute does not, however, define those "rights and property," we look to legislative history and to the background against which Congress enacted the 1980 amendments to determine whether Congress intended grazing by relocatees to be such a protectable right.
 
 
 19
 Looming large in the background of the 1980 amendments is the Healing v. Jones litigation, over which Judge Walsh of the Arizona District Court presided. Judge Walsh stressed the importance of grazing to the Navajo in various decisions concerning the joint use area. He noted that Congress specifically provided for the protection and continued sustenance and livelihood of Navajo relocatees and that it was necessary to allow the grazing of livestock as an important part of this protection. See Sekaquaptewa v. MacDonald, No. 579-PCT (JAW) (D.Ariz. Nov. 30, 1978) (decision regarding grazing rights).
 
 
 20
 The legislative history of the 1980 amendments reflects Congress' intent to codify orders previously entered by Judge Walsh to ensure the well-being of relocatees. See H.R.Rep. No. 1094, 96th Cong., 2d Sess. 14 (1980) (Conference Committee Report) (section 3 is patterned after an order of the federal district court); S.Rep. No. 373, 96th Cong., 1st Sess. 6 (1979) (protection of relocatees). Further, Congress rejected a proposed amendment which would have provided that "no person should have a right to graze livestock on partitioned lands without the consent of the tribe involved...." H.R.Rep. No. 544, 96th Cong., 1st Sess. 6 (1979). We therefore conclude that the district court correctly held that grazing by Navajo relocatees and life tenants is a right subject to unilateral protection by the federal government if efforts at achieving Hopi concurrence are unsuccessful.
 
 
 21
 The government agrees that Navajo relocatees and life tenants have grazing rights subject to protection by the Secretary under the proviso to subsection (e) and that each tribe enjoys general law and order jurisdiction over the land partitioned to it. See 25 U.S.C. Sec. 640d-9(e)(1)(B).[3] The government contends in its cross-appeal, however, that with respect to grazing, the Interior Secretary may continue to exercise exclusive authority over the granting of permits to Navajo relocatees and life tenants under the regulations which were promulgated prior to the 1980 amendments and which recently have been redesignated. See 25 C.F.R. Pt. 153 (redesignated at 25 C.F.R. Pt. 168, 47 Fed.Reg. 13,327 (1982)). Its argument is based upon its construction of subsection (e)(1)(A), which provides that grazing shall be administered by the appropriate Bureau of Indian Affairs office, with the concurrence of the respective tribes, "under applicable laws and regulations." The government argues that Congress' reference to applicable regulations refers to the regulations previously promulgated with respect to grazing and hence, that the clause authorizes the Interior Department to continue administering conservation practices and issuing grazing permits under these regulations.[4]
 
 
 22
 While the government argues that the phrase "applicable law and regulations" is intended to perpetuate the "regulations" in effect at the time of passage of the 1980 amendments, it does not attempt to argue that Congress intended by this amendment to perpetuate all the laws in effect prior to 1980. Those laws, of course, included what Congress intended to change by passing the 1980 amendments. The government's argument therefore necessarily distinguishes between applicable "law" and applicable "regulations" under the terms of the statute.
 
 
 23
 Not only is this distinction at odds with itself, but it is nowhere supported by the statutory language or legislative history of the 1980 Act. If accepted, the government's position would nullify the express requirement of tribal concurrence with respect to conservation practices. Congress adopted the concurrence requirement as part of its attempt, in section 3 of the 1980 Amendments, to compromise the protection needed by Navajo relocatees and life tenants with the right of the Hopi to greater jurisdiction over their partitioned land. See 126 Cong.Rec. H5661-63 (daily ed. June 25, 1980); Conference Committee Report, supra. The district court therefore accurately construed these provisions of the Navajo-Hopi Settlement Act in light of Congress' intent, and we affirm its judgment.
 
 
 24
 Affirmed.
 
 
 
 *
 Substituted for Peter MacDonald pursuant to Fed.R.App.P. 43(c)
 
 
 **
 Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 The district court tried the case together with a motion that previously had been filed against the Navajo Tribe with respect to relocatee grazing rights. See Sidney v. MacDonald, No. 579-PCT (JAW). The Hopi Tribe sought to vacate two decisions which District Judge Walsh issued in connection with his partition of the joint use area. The district court had granted the Navajo relocatees grazing rights and held that the Interior Department had exclusive jurisdiction concerning all activities involving livestock reduction, range restoration, and the control of grazing on Hopi partitioned land. See Sekaquaptewa v. MacDonald, No. 579-PCT (JAW) (D.Ariz. Feb. 10, 1977) (judgment of partition); Sekaquaptewa v. MacDonald, No. 579-PCT (JAW) (D.Ariz. Nov. 30, 1978) (decision regarding grazing rights). After the case was transferred to Judge Carroll, the same judgment was entered in Sidney v. MacDonald as was entered in Hopi Tribe v. Watt, 530 F.Supp. 1217, one consolidated appeal followed
 
 
 [2]
 We recited a detailed account of the judicial history of the dispute in Sekaquaptewa v. MacDonald, 626 F.2d 113, 114-17 (9th Cir.1980). Other decisions involving the Joint Use Area include: Sekaquaptewa v. MacDonald, 575 F.2d 239 (9th Cir.1978); Sekaquaptewa v. MacDonald, 544 F.2d 396 (9th Cir.1976), cert. denied, 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977); Hamilton v. MacDonald, 503 F.2d 1138 (9th Cir.1974); United States v. Kabinto, 456 F.2d 1087 (9th Cir.1972), cert. denied, 409 U.S. 842, 93 S.Ct. 40, 34 L.Ed.2d 81 (1972); Hamilton v. Nakai, 453 F.2d 152 (9th Cir.1971), cert. denied, 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972). See also, Sekaquaptewa v. MacDonald, 619 F.2d 801 (9th Cir.1980), and Sekaquaptewa v. MacDonald, 591 F.2d 1289 (9th Cir.1979), which involve the Navajo-Hopi dispute over lands outside the partitioned area
 
 
 [3]
 The government does not appeal from that portion of the district court's judgment which invalidated Interior Department regulations contained in 25 C.F.R. Pt. 12 as "incompatible" with the scope of the Hopi Tribe's jurisdiction under section 640d-9(e)(1)(B)
 
 
 [4]
 We note, however, that the government has, subsequent to the district court decision in this case, promulgated new interim regulations calling for Hopi concurrence in grazing and conservation measures on Hopi partitioned land. See 47 Fed.Reg. 39,817 (1982). Those regulations are not directly involved in this appeal, and we express no view concerning them