Alvin CLINTON; Teddy Begay; Peggy Scott; Verna Clinton; Carlos Begay; Irena Babbitt Lane; Glenna Begay; John B. Nez, Plaintiffs–Appellants,

v.

Bruce BABBITT, Secretary of the Interior, Defendant–Appellee.

No. 98–15306.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1998.

Decided June 17, 1999.

---

Daniel H. Israel, Carefree, Arizona, for the plaintiffs-appellants.

Steven E. Carrol and John A. Bryson, United States Department of Justice, Washington, D.C., and Richard G. Patrick, Assistant United States Attorney, Phoenix, Arizona, for the defendant-appellee.

Tim Atkeson and Peter Krumholz, Arnold & Porter, Denver, Colorado, for amicus curiae the Hopi Tribe.

Before: BRIGHT,[1] FLETCHER, and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Alvin Clinton, Teddy Begay, Peggy Scott, Verna Clinton, Carlos Begay, Irena Babbitt Lane, Glenna Begay, and John Nez ("the plaintiffs") are members of the Navajo Nation living on the Hopi Partitioned Lands ("HPL"), a portion of northeast Arizona that has been determined, after decades of litigation and legislation, to belong to the Hopi Tribe. Congress attempted to resolve residual disputes among the Navajo Nation, the Hopi Tribe, the United States, and Navajos who live on the HPL ("HPL Navajos"), in the Navajo–Hopi Land Dispute Settlement Act of 1996, Pub.L. No. 104–301, 110 Stat. 3649 (1996) ("1996 Settlement Act"). Under the 1996 Settlement Act, HPL Navajos who wish to continue living on the HPL must enter into long-term leases with the Hopi Tribe.

The plaintiffs, dissatisfied with the terms of the leases approved by the 1996 Settlement Act, brought this action against Secretary of the Interior Bruce Babbitt. The district court dismissed the action. It determined that it lacked subject matter jurisdiction, that the plaintiffs' action was barred by sovereign immunity, that the Hopi Tribe was an indispensable party to the action, and that the plaintiffs failed to state a claim upon which relief could be granted.

We have jurisdiction under 28 U.S.C. § 1291. We affirm the district court's judgment on the ground that the Hopi Tribe is an indispensable party.

## HISTORICAL BACKGROUND

The plaintiffs' suit is the latest chapter in a more-than-a-century-old dispute between members of the Hopi Tribe and the Navajo Nation over the use of approximately 2.5 million acres in northern Arizona. This dispute has been the subject of extensive litigation and legislation, including at least eighteen opinions of this court.[2]

---

1. The Honorable Myron H. Bright, Senior Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

2. See, e.g., Masayesva ex rel. Hopi Indian Tribe v. Hale, 118 F.3d 1371 (9th Cir.1997); Peabody Coal Co. v. Navajo Nation, 75 F.3d 457 (9th Cir.1996); Masayesva v. Zah, 65 F.3d 1445 (9th Cir.1995); Hopi Tribe v. Navajo Tribe, 46 F.3d 908 (9th Cir.1995); Attakai v. United States, 21 F.3d 1111 (9th Cir.1994); Benally v. Hodel, 940 F.2d 1194 (9th Cir.

We provide only a summary of the relevant details of these disputes.

The disputes have their genesis in an Executive Order signed by President Chester A. Arthur in 1882. That Order created a 2.5 million acre reservation for the Hopi Tribe and for "such other Indians as the Secretary of Interior may see fit to settle thereon." Exec. Order of Dec. 16, 1882, *reprinted in Healing v. Jones*, 210 F.Supp. 125, 129 n. 1 (D.Ariz.1962), *aff'd*, 373 U.S. 758, 83 S.Ct. 1559, 10 L.Ed.2d 703 (1963). Over the next several years, the Hopi Tribe enjoyed the right to use and occupy the 2.5 million acre reservation, but the Navajo population in the area grew substantially. Conflicting claims to exclusive use arose between the Hopi Tribe and the Navajo Nation, producing what became known as " 'the greatest title problem in the West.' " *Id.* at 129.

In 1958, to quiet title to the area, Congress authorized litigation between the Hopi Tribe and the Navajo Nation. *Id.* at 130 (citing Act of July 22, 1958, Pub.L. No. 85–547, 72 Stat. 403 (1958)). Pursuant to that litigation, a federal district court determined that 650,000 acres of the disputed area belonged exclusively to the Hopi Tribe, and that the Hopi Tribe and Navajo Nation had joint and undivided interests in the remaining approximately 1.8 million acres, an area thereafter referred to as the "Joint Use Area." *Id.* at 132. Congress then directed the partitioning of the Joint Use Area in the Navajo and Hopi Indian Land Settlement Act of 1974, Pub.L. No. 93–531, 88 Stat. 1712 (codified as amended at 25 U.S.C. §§ 640d *et seq.* (1994)) ("1974 Settlement Act"). Pursuant to the 1974 Settlement Act, a federal district court in 1979 partitioned the Joint Use Area by allocating approximately 900,000 acres

known as the Hopi Partitioned Lands (the "HPL") to the Hopi Tribe and approximately 900,000 acres known as the Navajo Partitioned Lands to the Navajo Nation. *See Sekaquaptewa v. MacDonald*, 626 F.2d 113 (9th Cir.1980) (affirming the partition).

The 1974 Settlement Act required members of each tribe to move from lands partitioned to the other tribe by 1986 and created a commission to pay for the major costs of such relocations. 25 U.S.C. §§ 640d–11, 640d–12, 640d–13, 640d–14. As of 1996, the United States had spent more than $330 million to relocate more than 11,000 tribal members. S.Rep. No. 104–363, at 22 (1996) (statement of Lois J. Schiffer, Assistant Attorney General, Environment and Natural Resources Division, U.S. Department of Justice). All of the few Hopi residing on lands partitioned to the Navajo Nation, and several thousand Navajos residing on lands partitioned to the Hopi Tribe, moved in the years following the 1979 partitioning. *Id.* About 50 to 100 Navajo families (the "HPL Navajos"), however, refused to leave the Hopi Partitioned Lands. *Id.* at 5.

In 1988, a group of HPL Navajos filed suit against the United States claiming that the 1974 Settlement Act's partition requirement violated the First Amendment. *Manybeads v. United States*, 730 F.Supp. 1515 (D.Ariz.1989) *appeal docketed* No. 90–15003 (9th Cir.1990). In 1991, this court ordered the plaintiffs in that litigation, the United States, the Navajo Nation, and the Hopi Tribe into mediation. As a result of this mediation, a 1992 Agreement in Principle was reached. That Agreement was ratified by the Hopi Tribal Council, the Navajo Tribal Council, the Secretaries of the Interior and Agricul-

1990); *Bedoni v. Navajo–Hopi Indian Relocation Com'n*, 878 F.2d 1119 (9th Cir.1989); *Walker v. Navajo–Hopi Indian Relocation Com'n*, 728 F.2d 1276 (9th Cir.1984); *Hopi Tribe v. Watt*, 530 F.Supp. 1217 (D.Ariz.1982), *aff'd*, 719 F.2d 314 (9th Cir.1983); *Sidney v. MacDonald*, 536 F.Supp. 420 (D.Ariz.1982), *aff'd, Sidney v. Zah*, 718 F.2d 1453 (9th Cir. 1983); *Sekaquaptewa v. MacDonald*, 626 F.2d 113 (9th Cir.1980); *Sekaquaptewa v. Mac-*

*Donald*, 619 F.2d 801 (9th Cir.1980); *Sekaquaptewa v. MacDonald*, 591 F.2d 1289 (9th Cir.1979); *Sekaquaptewa v. MacDonald*, 575 F.2d 239 (9th Cir.1978); *Sekaquaptewa v. MacDonald*, 544 F.2d 396 (9th Cir.1976); *Hamilton v. MacDonald*, 503 F.2d 1138 (9th Cir.1974); *United States v. Kabinto*, 456 F.2d 1087 (9th Cir.1972); *Hamilton v. Nakai*, 453 F.2d 152 (9th Cir.1971).

ture, and the Associate Attorney General of the United States. Further negotiations resulted in a settlement between the Hopi Tribe and the United States. *See* S.Rep. No. 104–363, at 35–47 ("Settlement Agreement").

Under the Settlement Agreement between the Hopi Tribe and the United States, the Hopi Tribe agreed to permit HPL Navajo families to remain on the HPL under the terms of 75–year leases ("accommodation leases"). *Id.* at 40 (Settlement Agreement, ¶ 4(a)). Each eligible HPL Navajo could choose whether to enter into a 75–year accommodation lease with the Hopi Tribe. The terms of the leases are standard terms embodied in an Accommodation Agreement negotiated by the Hopi Tribe, the Navajo Nation, and representatives of the HPL Navajos. *See* S.Rep. No. 104–363, at 47–54 ("Accommodation Agreement"). Under the terms of the Accommodation Agreement, eligible HPL Navajo families are entitled to lease (at no cost) for 75 years a three-acre homesite and ten acres of farmland, to have grazing privileges, and to engage in traditional uses of other areas of the HPL. *Id.*

The United States and the Hopi Tribe also agreed that, in return for a total of $50.2 million in compensation from the United States, the Hopi Tribe would dismiss several claims the Tribe had brought against the United States and abide by the lease terms set forth in the Accommodation Agreement. S.Rep. No. 104–363, at 6. In particular, the United States agreed to pay the Hopi Tribe the following incremental compensation: (1) a $2.4 million payment after the Tribe dismisses its pending appeal in this court in *Secakuku v. Hale,* No. 94–17032 (9th Cir. filed Nov. 11, 1994); (2) a $22.7 million payment after Congress enacts legislation expanding the Tribe's leasing authority and the Tribe dismisses its claims in the United States Court of Federal Claims for damages caused by any Federal action that occurred prior to 1982; (3) a $10 million payment after 65 percent of the eligible Navajo heads of household living on the HPL either sign an accommodation lease or relocate and after the Tribe dismisses its claims in the United States Court of Federal Claims for livestock trespass damages against the United States from 1983 to 1988; and (4) a $15.1 million payment after 75 percent of the eligible Navajo heads of household living on the HPL either sign an accommodation lease or relocate and after the Tribe dismisses its claims in the United States Court of Federal Claims for livestock trespass damages against the United States from 1989 through 1996. *Id.* at 41–42 (Settlement Agreement, ¶ 6).

In addition, the United States agreed to take in trust up to 500,000 acres of land in northern Arizona acquired by the Hopi Tribe, if 75 percent of the eligible Navajo heads of household living on the HPL either sign an accommodation lease or relocate. *Id.* at 42 (Settlement Agreement, ¶ 7). As part of that 500,000 acres, the United States also agreed, on behalf of the Hopi Tribe and with funds provided by the Tribe, to acquire State of Arizona lands interspersed among private lands acquired by the Tribe. *Id.*

Congress ratified the Settlement Agreement and the Accommodation Agreement in the Navajo–Hopi Land Dispute Settlement Act of 1996, Pub.L. No. 104–301, 110 Stat. 3649 (1996) ("1996 Settlement Act"). Congress explicitly approved the Settlement Agreement, but added conditions to the taking of land in trust for the Hopi Tribe by the United States, including increasing the triggering percentage of HPL Navajo heads of household entering accommodation leases or relocating from 75 percent to 85 percent. 1996 Settlement Act § 5(2)(A). Section 9 of the 1996 Settlement Act amended 25 U.S.C. § 415 to permit accommodation leases for a term of 75 years and to allow future extensions of such leases. *Id.* at § 9. Finally, Congress confirmed the Hopi Tribe's right to bring actions "to quiet possession that relates to use of the HPL after February 1, 2000, by a Navajo family that is eligible for an

accommodation [lease], but fails to enter into an accommodation [lease]." *Id.* at § 7.

The first two phases of the Settlement Agreement between the United States and the Hopi Tribe have been completed. The Hopi Tribe has dismissed claims before this court and the United States Court of Federal Claims, and the United States has paid the Hopi Tribe the sums of $2.4 million and $22.7 million. *See Masayesva ex rel. Hopi Tribe v. Hale,* 118 F.3d 1371, 1384 (9th Cir.1997), *cert. denied, Hale v. Secakuku,* —— U.S. ——, 118 S.Ct. 1048, 140 L.Ed.2d 112 (1998). The remaining two phases of the Settlement Agreement require Secretary Babbitt's approval of accommodation leases between HPL Navajos and the Hopi Tribe.

### PROCEDURAL HISTORY

 The plaintiffs, dissatisfied with the standard terms of the accommodation leases, filed a complaint alleging that the terms of those leases violated the equal protection clause of the Fifth Amendment.[3] In their complaint, they requested declaratory judgments invalidating the 1996 Settlement Act and its implementation and an injunction prohibiting Secretary Babbitt from approving any accommodation leases pursuant to the 1996 Settlement Act. The district court dismissed the complaint because of lack of subject matter jurisdiction, sovereign immunity, failure to state a claim upon which relief could be granted, and failure to join the Hopi Tribe, which the court concluded was an indispensable party. The district court then dismissed the action, and this appeal followed.

### DISCUSSION

### I

#### Standards of Review

 We review de novo the issues of subject matter jurisdiction, sovereign immunity, and failure to state a claim. *Crist*

*v. Leippe,* 138 F.3d 801, 803 (9th Cir.1998) (subject matter jurisdiction); *Commodity Futures Trading Comm'n v. Frankwell Bullion Ltd.,* 99 F.3d 299, 305 (9th Cir. 1996) (sovereign immunity); *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295 (9th Cir.1998) (failure to state a claim). We review for an abuse of discretion the district court's alternative ground for dismissal for failure to join an indispensable party. *Virginia Sur. Co. v. Northrop Grumman Corp.,* 144 F.3d 1243, 1248 (9th Cir.1998).

### II

#### Subject Matter Jurisdiction

 The district court determined it lacked subject matter jurisdiction because the plaintiffs failed to state a federal claim upon which relief could be granted and, thus, did not establish "a cognizable basis independent of [28 U.S.C. §§ 1331 and 2201] for the exercise of jurisdiction." We conclude that the district court erred in this determination because federal jurisdiction may lie and "the plaintiff may have a cause of action, even though [the plaintiff is] entitled to no relief at all." *Davis v. Passman,* 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). As the Supreme Court explained in *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), federal question jurisdiction does not depend on whether a plaintiff states a viable cause of action:

> Jurisdiction, therefore, is not defeated, as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.

327 U.S. at 682, 66 S.Ct. 773. *See also Duke Power Co. v. Carolina Env. Study*

---

**3.** The plaintiffs originally pleaded three other claims for relief. They have waived those claims by not objecting on appeal to the district court's dismissal of them. *See, e.g., Stan-*

*ford Ranch, Inc. v. Maryland Casualty Co.,* 89 F.3d 618, 628 n. 5 (9th Cir.1996); *State of Nevada v. Watkins,* 914 F.2d 1545, 1560 (9th Cir.1990).

*Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978) (holding that, to sustain jurisdiction under section 1331, it was "not necessary to decide whether [an alleged cause of action] based directly on the Constitution is in fact a cause of action 'on which [the plaintiffs] could actually recover.'" (quoting *Bell*, 327 U.S. at 682, 66 S.Ct. 773)).

Here, the plaintiffs have alleged a substantive basis for the invocation of federal question jurisdiction under the Equal Protection Clause of the Fifth Amendment. This Clause confers on the plaintiffs a constitutional right to be free from illegal discrimination. *Davis*, 442 U.S. at 236, 99 S.Ct. 2264; *Buckley v. Valeo*, 424 U.S. 1, 93, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). It is well established that federal courts have jurisdiction to provide equitable relief to protect rights safeguarded by the Constitution. *Bell*, 327 U.S. at 684, 66 S.Ct. 773. More specifically, the Supreme Court has repeatedly recognized that a plaintiff may obtain equitable relief from violations of the Fifth Amendment's Equal Protection Clause. *E.g., Davis*, 442 U.S. at 242–44, 99 S.Ct. 2264; *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Jacobs v. United States*, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933). Thus, the plaintiffs present a claim that "arises under" the Constitution. That claim provides a proper ground for federal question jurisdiction.[4]

4. Whether the allegations of the plaintiffs' equal protection claim are sufficient to state a claim upon which relief may be granted is a question we need not reach in this appeal. We note, however, the apparent lack of substance to the claim. First, the plaintiffs admit they are in the unique position of being offered free leases to remain on land to which they have no right, and fail to allege that they are being treated less favorably than any similarly situated individuals. Second, even if the plaintiffs make the threshold showing of disparate treatment they fail to show that this treatment is not rationally related to legitimate legislative goals, such as the peaceful settlement of the Navajo–Hopi land dispute:

> [The 1996 Settlement Act] will implement a settlement [which is] a consensual resolution of an age old problem. It creates a

## III

### Sovereign Immunity

■ The plaintiffs sued only Secretary Babbitt, a federal official. From the body of the complaint, it is obvious the claim is a claim against the United States. In such a case, a federal court lacks jurisdiction unless the plaintiff establishes that sovereign immunity has been waived. *See North Side Lumber Co. v. Block*, 753 F.2d 1482, 1484 n. 3 (9th Cir.1985) (citing *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)).

In 5 U.S.C. § 702, the United States expressly waived "sovereign immunity in non-statutory review actions for nonmonetary relief brought under 28 U.S.C. § 1331." *Assiniboine and Sioux Tribes v. Board of Oil and Gas Conservation*, 792 F.2d 782, 793 (9th Cir.1986); *accord The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 523–26 (9th Cir.1989). This is such an action. The plaintiffs seek only nonmonetary relief against the United States. Sovereign immunity does not bar their suit.

## IV

### Failure to Join an Indispensable Party

■ Pursuant to Federal Rule of Civil Procedure 19, the district court dismissed this case because an absent party (the Hopi Tribe) was "indispensable." *See*

> way for Navajo families now residing on Hopi land to lawfully remain at the homesites where their families have lived for many generations. At the same time, it preserves the Hopi Tribe's right to exercise jurisdiction over its land. It is based on principles of self-determination for the Tribes and human dignity for all tribal members. With this settlement, both tribes now will be able to devote their efforts and resources to important educational, health, and economic developments for the Navajo and Hopi people.

Navajo–Hopi Land Dispute Settlement Act of 1996: Signing Statement of President William J. Clinton, 32 Weekly Comp. Pres. Doc. 2042 (Oct. 14, 1996) *reprinted in* 110 Stat. 4154 (1996).

Fed.R.Civ.P. 19(b). Our analysis proceeds in two steps:

· We first ask whether the district court correctly determined that an absent party is "necessary to the suit." Fed. R.Civ.P. 19(a). If so, and if that party cannot be joined, we then must assess whether the district court correctly found the party " 'indispensable' so that in 'equity and good conscience' the suit should be dismissed." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir.1990) (quoting Fed.R.Civ.P. 19(b)). "The inquiry is a practical one and fact specific, and is designed to avoid the harsh results of rigid application. The moving party has the burden of persuasion in arguing for dismissal." *Id.* (citations omitted).

*Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir.1992).

### A. The Hopi Tribe as a Necessary Party

 Under Rule 19(a), the Hopi Tribe is a necessary party and must be joined if:

(1) in the [Tribe's] absence complete relief cannot be accorded among those already parties, *or*

(2) the [Tribe] claims an interest relating to the subject of the action and is so situated that the disposition of the action may (i) as a practical matter impair or impede the [Tribe's] ability to protect that interest . . .

Fed.R.Civ.P. 19(a) (emphasis added). The district court held that the Hopi Tribe was a necessary party under both subparagraph (1) and (2) of Rule 19(a). Satisfying the requirements of either subparagraph establishes necessary party status.

#### 1. Subparagraph (1)—Complete Relief Among the Parties

 In the Tribe's absence, complete relief may not be afforded between the parties to this action. In *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1326 (9th Cir. 1975), we held that complete relief could not be afforded in an action challenging a lease between the Hopi Tribe and Peabody Coal Company unless the Tribe was

joined. As we explained in *Lomayaktewa*, a district court cannot adjudicate an attack on the terms of a negotiated agreement without jurisdiction over the parties to that agreement. *Id.* See also *Pit River Home and Agric. Coop. Ass'n. v. United States*, 30 F.3d 1088, 1099 (9th Cir.1994) ("[E]ven if the Association obtained its requested relief in [a dispute over which group of Indians are beneficial owners of a certain piece of property], it would not have complete relief, since judgment against the government would not bind the [other group of Indians], which could assert its right to possess the [property]."); *Confederated Tribes of the Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir.1991) (noting that judgment against federal officials in an action challenging an agreement between the United States and the Quinault Nation would not bind the Nation).

#### 2. Subparagraph (2)—Impairment of the Hopi Tribe's Interest

The plaintiffs argue that the 75–year accommodation leases between the Hopi Tribe and the HPL Navajos do not become effective until the leases are approved by Secretary Babbitt. None of the leases has been approved as yet. Therefore, according to the plaintiffs, the Tribe lacks a vested interest in the leases and lacking such an interest it has no legally protected interest that may be impaired or impeded by the present action. This argument misapprehends what is required to establish necessary party status under subparagraph (2) of Rule 19(a).

In *Kescoli v. Babbitt*, 101 F.3d 1304, 1309–12 (9th Cir.1996), we held that the Navajo Nation and the Hopi Tribe were necessary (and also indispensable) parties to a Navajo's challenge to a term of a settlement agreement among a coal mining company, the United States Department of Interior Office of Surface Mining ("OSM"), the Navajo Nation, and the Tribe. The agreement modified thirteen terms of a permit issued by OSM for the coal compa-

ny's mining activities under lease agreements with the Navajo Nation and the Hopi Tribe. *Id.* at 1307–08. Although the plaintiff insisted she was challenging only a single term of the settlement regarding mining near burial sites and was not questioning the validity of the leases, we explained that pulling a single legal thread from the tapestry of the settlement could cause it to unravel and thereby impair the interests of absent parties:

> The district court did not err in determining that the Navajo Nation and the Hopi Tribe are necessary parties. The settlement of [the term at issue] affected the conditions under which [the coal company] may mine [at sites covered by the lease agreements]. In turn, this could affect the amount of royalties received by the Navajo Nation and the Hopi Tribe and employment opportunities for their members.

> Further, the Navajo Nation and the Hopi Tribe, by virtue of their sovereign capacity, have an interest in determining what is in their best interests by striking an appropriate balance between receiving royalties from the mining and the protection of their sacred sites. In her action, [the plaintiff] challenges the balance struck by the Navajo Nation and the Hopi Tribe.

*Id.* at 1309–10 (citations omitted).

Our decision in *Kescoli* governs this case. The plaintiffs seek, at a minimum, a declaration that Secretary Babbitt cannot constitutionally approve any individual leases between HPL Navajos and the Hopi Tribe that use the standard terms of the Accommodation Agreement. Such a declaration would prohibit the Tribe from fulfilling its obligations under the Settlement Agreement to enter into such leases and would deprive the Tribe of substantial compensation from the United States (over $25 million and the creation of additional trust lands), which is conditioned on Secretary Babbitt's approval of certain numbers of such leases. 1996 Settlement Act, § 5(2)(A); Sen. Rep. No. 104–363, at 41–43 (Settlement Agreement, ¶¶ 6–7). The Hopi Tribe, therefore, has a legally pro-

tected interest relating to the subject of the action as defined by Rule 19(a)(2). *See Quileute Indian Tribe v. Babbitt,* 18 F.3d 1456, 1459 (9th Cir.1994) (Quinault Indian Nation is necessary party to action by Quileute Indian Tribe against the United States, seeking to overturn the Department of Interior's decision that certain fractional property interests within the Quinault Reservation escheat to the Quinault Nation rather than to the Quileute Tribe); *Lomayaktewa,* 520 F.2d at 1326 ("It seems perfectly obvious that a judgment rendered in the absence of the Hopi Tribe most surely would be prejudicial to it, for the royalties to be paid under the lease still amount to more than $20 million and cancellation of the lease would eliminate the employment of many of the Hopis.").

The Hopi Tribe also has a legally protected interest in regaining jurisdiction over the Hopi Partitioned Lands. *See, e.g., Pit River,* 30 F.3d at 1099 ("as the beneficial owner of the Ranch, the Council clearly has a legal interest in the litigation"); *Shermoen,* 982 F.2d at 1318 (holding that "absent tribes have an indisputable interest in the outcome" of a challenge to statute partitioning land between tribes). Any relief accorded the plaintiffs will "as a practical matter impair or impede" the Tribe's ability to protect this interest in the HPL. *See* S.Rep. No. 104–363, at 34 (additional views of Sen. Pete Domenici) ("The Accommodation Agreement . . . is an integral and critical component of any settlement. Without the Accommodation Agreement, the Navajos on Hopi land would remain out of compliance and the threat of pending litigation could easily lead to more bitterness and distrust, more litigation, and no resolution of this long-standing problem.").

The district court correctly determined that the Hopi Tribe is a necessary party to this litigation.

### B. The Hopi Tribe as an Indispensable Party

If the Hopi Tribe is an indispensable party, the district court correctly dis-

missed the complaint under Rule 19(b) because the Hopi Tribe enjoys sovereign immunity and, as a result, it cannot be joined as a party without its consent. *Shermoen*, 982 F.2d at 1318. It has not given that consent.

Determining whether the Hopi Tribe is an indispensable party requires the consideration of four factors:

(1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties;

(2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;

(3) whether a judgment rendered in the person's absence will be adequate;

(4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

(Fed.R.Civ.P. 19(b)).

The district court determined that a judgment in favor of the plaintiffs rendered in the Hopi Tribe's absence would be highly prejudicial to the Tribe, that such a judgment could not be shaped to lessen the prejudice to the Tribe, and that in the absence of the Hopi Tribe, such a judgment would be inadequate between the parties. Although the district court recognized that "the absence of an alternative forum weighs in favor of" the plaintiffs, it concluded that "the other factors heavily outweigh this factor." We agree.

As discussed earlier, the Tribe will clearly suffer prejudice if the plaintiffs are successful in their action. *See Confederated Tribes*, 928 F.2d at 1499 (prejudice stems from the same legal interests making someone a necessary party to the action). In the absence of the Tribe, there is no relief or remedy that would lessen the prejudice the Hopi Tribe would suffer and still provide adequate relief to the plaintiffs. *See Shermoen*, 982 F.2d at 1320 ("The relief sought in this case [a declaration that a statute which partitioned land between two tribes is unconstitutional] would prevent the absent tribes from exercising sovereignty over the reservations allotted them by Congress. It is difficult to imagine a more 'intolerable burden on governmental functions.'") (quoting *State of Washington v. Udall*, 417 F.2d 1310, 1318 (9th Cir.1969)); *see also Kescoli*, 101 F.3d at 1310–11 (Hopi Tribe and Navajo Nation were indispensable parties to a challenge to a term of a settlement agreement between the tribes, a coal company, and a federal agency); *Pit River*, 30 F.3d at 1101–03 (federally recognized governing body of Indian tribe was indispensable party to claims by group of Indian families to beneficial ownership of land held in trust by United States); *Shermoen*, 982 F.2d at 1319 (absent tribes were indispensable parties to action brought by individual Indians challenging the constitutionality of a statute partitioning land between the tribes).

Although no alternative forum exists for the plaintiffs to seek relief, we conclude that the Hopi Tribe's interest in maintaining its sovereign immunity outweighs the interest of the plaintiffs in litigating their claim. *See Quileute*, 18 F.3d at 1460–61 ("[A p]laintiff's interest in litigating a claim may be outweighed by a tribe's interest in maintaining its sovereign immunity' [because] 'society has consciously opted to shield Indian tribes from suit without congressional or tribal consent.'" (citations omitted)).

The plaintiffs argue for the first time on appeal that their action should be permitted to proceed under the "public rights" exception to the traditional joinder rules. *See generally* 4 James Wm. Moore, Moore's Federal Practice § 19.06[6] at 19–111 to 19–114 (4th ed. 1999) ("Under [the] 'public rights exception,' ... absentees who would be affected by a decision in the case and whose joinder is not feasible simply will not be held indispensable.... It permits the court to proceed without absentees in light of a perceived overarching good." (footnotes omitted)). We need not consider this issue because it was not raised before the district court. *See Sin-*

*gleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976).

In any event, in the very case the plaintiffs rely upon, we rejected this argument. *See Shermoen,* 982 F.2d at 1319. In *Shermoen,* individual Indians challenged the constitutionality of a statute partitioning land between two tribes. We held that the plaintiffs' claim did not fall within the public rights exception because it would " 'destroy the legal entitlements of [an] absent party.' " *Id.* (citations omitted). *Accord Kescoli,* 101 F.3d at 1312 ("[In view of] the significant threat to the Navajo Nation's and the Hopi Tribe's interests, the application of the public rights exception is not appropriate.").

## CONCLUSION

Because the district court did not abuse its discretion in concluding that the Hopi Tribe is a necessary and indispensable party which the plaintiffs failed to join, we affirm the district court's judgment dismissing the action.

AFFIRMED.